Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 94 C 1471 | **DATE** | 12/4/2002 |
| **CASE TITLE** | Marie O et al vs. George Ryan et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  **ENTER MEMORANDUM OPINION:** We deny plaintiffs' motion (Doc 179-1) for an order permitting attorney-client communication.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | DEC 05 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 190 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| SCT | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIE O., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 94 C 1471 |
| | ) | |
| GEORGE RYAN, Governor of Illinois, and | ) | |
| LINDA RENEE BAKER, Secretary of the | ) | |
| Illinois Department of Human Services, in their | ) | |
| official capacities, | ) | DOCKETED |
| | ) | DEC 5 2002 |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on a motion brought by the plaintiff class representatives ("Plaintiffs") for an order permitting attorney-client communication. For the reasons set forth below, we deny the motion.

### BACKGROUND

This case deals with the Early Intervention ("EI") program which assists developmentally disabled infants and toddlers. On September 19, 1996, we entered a final order and judgement. Under the order, the EI lead agency was required to meet certain requirements and a court appointed monitor was to review regular status

190

reports. On March 15, 2000, after the Defendant Department of Human Services became the lead agency, the monitoring was ended as we found the state to be "in substantial compliance" with those requirements. At the end of 2000, Defendant indicated that it intended in the near future to include in the EI system a quality enhancement ("QE") review process. Plaintiffs claim that the QE process is deficient because it gives authority to reviewers who did not participate in the planning and forming of the child's individualized family service plan ("IFSP") to override the service plan developed by the IFSP team.

On January 26, 2001 Plaintiffs' motion for injunctive relief to stop the QE process was dismissed without prejudice. The QE review process went into effect June 1, 2001. The QE changes were included in public notifications. Defendant requested approval for the QE review from the U.S. Department of Education, Office of Special Educational Programs ("OSEP"). On September 6, 2001, OSEP sent a letter to Defendant indicating that the QE process did not comply with Part C of the Individuals with Disabilities Education Act. Defendant utilized the QE process until July 31, 2002.

Plaintiffs ask this court to order Defendant to produce the names of all children who had a reduction in their services as a result of the QE review process so that Plaintiffs can notify those families that they are entitled to an immediate review of their

service utilizing the new Quality Assurance ("QA") process. According to Plaintiffs even a few months of service reductions may significantly affect children in the EI program, and Plaintiffs assert that irreparable harm may be done to the children if this order is not granted. Also, Plaintiffs claim that the required six month review for children will not be adequate to correct any problems resulting from the QE process because the six month review is a less intensive review.

## DISCUSSION

Plaintiffs first assert that, as the class representative for all class members, they have a right to contact class members and that Defendant is preventing such communications. Plaintiffs repeatedly cite *Gulf Oil Corp. v. Bernard*, 452 U.S. 89 (1981), in support of their alleged right to have Defendant provide them with names and addresses of class members. However, *Gulf Oil Corp.* dealt with whether a court has authority to prohibit any communications between a plaintiff class representative and class members. *Id.* at 89-90. The case does not address whether a court should order a defendant to help facilitate such communications. *Id.* Also, Plaintiffs' characterization of Defendant's conduct as actively preventing client communications is inaccurate.

Plaintiffs apparently seek an order pursuant to Federal Rule of Civil Procedure 23(d)(2) which gives the court discretion to order that notice be given to class

members. We note that Rule 23(d)(2) is generally utilized to provide class members notice of a class action and give them an opportunity to opt out of the class or intervene in the class action. *See e.g. Lemon v. International Union of Operating Engineers, Local No. 139, AFL-CIO*, 216 F.3d 577, 582 (7th Cir. 2000). On September 23, 2002, we ordered Defendant to provide us with more specific information regarding the number of children that were reviewed under the QE process that have yet to be reviewed under a different process. According to Defendant as of October 1, 2002, there were 8,921 children that were reviewed under the QE process that have yet to receive a subsequent annual review using the QA process. On February 1, 2003, there will be 5,347 children that were reviewed under the QE process and that will not have had a subsequent annual review under the QA process. By August 2003 all children in the EI program should have received an annual review utilizing the QA process.

In fairness, we must weigh the potential benefit to the children from the proposed notification against the hardship on the Defendant. According to Plaintiffs, the QE process is flawed because it allows reviewers, who did not take part in the planning and forming of the child's IFSP and who had never seen the child in question, to override the service plan developed by the IFSP team. Even if the QE process is somehow flawed, it does not necessarily mean that under the process every child was done a disservice and that his or her plan was improperly handled. We have no

indication as to how often the QE reviewers actually did override the IFSP team, nor how often such an override may have ended up being the correct decision, nor how often services were increased by the reviewers rather than decreased. The reviewers under the QE process were not administrators of Defendant seeking to cut costs. The QE review teams consisted of independent pediatric physicians and clinical therapists that were not employees of Defendant. Thus the number of children that would be benefitted by the proposed notification is going to be less than the total number of children yet to receive a QA review.

In addition some notification regarding procedural safeguards has already been provided to EI parents. All EI parents were given a booklet explaining the EI system which informs them of the right to appeal review decisions. Also on June 28, 2001, Defendant sent a letter to every EI family stating: "If you request administrative resolution or mediation regarding the recommended changing in your service on your current IFSP, your child will continue to receive current early intervention services until a decision had been made by the mediator or hearing officer." Thus, any parent that feels that their child was done a disservice under the QE process could use this procedure to retain current services and challenge the QE review.

Plaintiffs claim they have an "urgent" need to provide notification. They assert that "even a few months of service may significantly affect the children" and the

children "may suffer irreparable harm." However, Plaintiffs have not supplied any documentation to back up such a dramatic claim. Many children have already received a subsequent QA review. Within eight months every child in the EI system will have had an annual review utilizing the QA process which will sweep away any improper decisions made under the QE process. Also, by February 11, 2003, all but 22 children will have received at least a six month review subsequent to a QE review. Although the six month review may not be as intensive an investigation as an annual review, it will still operate to weed out some of the supposed errors committed under the QE process.

There are approximately 11,000 children currently in the EI program. According to Defendant, the only way to identify the specific children that have yet to receive the QA review is to "have the CFCs conduct a manual, case-by-case review of the record of every child enrolled in EI." We think that such a task would be overly burdensome on Defendant and that the children in the program will be better served if the resources necessary for such a review were used elsewhere. Defendant is conducting and scheduling new case reviews utilizing the QA process as we speak, and it would be counter-productive to order them to divert resources in order to produce lists of names and addresses for Plaintiffs.

Plaintiffs also ask as an alternative that we order Defendant to produce a list of all the children in the EI program. Plaintiffs claim that this would relieve Defendant of the burden of sifting through case files to determine which children were last reviewed under the QE process. Plaintiffs have not provided sufficient evidence to warrant requiring Defendant to produce all the names and addresses of EI participants. Even ordering the production of such a general list would be an undue burden on Defendant.

We also note that the Federal Educational Rights and Privacy Act of 1974 ("FERPA") limits Defendant's authority to disclose personal information of the children in the EI program. *See* 34 C.F.R. 99.30; 99.31; 99.33. Plaintiffs argue that they have a right to be provided with the list of names and addresses because FERPA permits a representative of parents to inspect and review any educational records "collected, maintained, or used by the agency." 34 C.F.R. 300.562(b)(3). Plaintiffs assert that, as class counsel and representative for all class members, they are entitled to the personal information of the children in question. Defendant argues that, since this class was certified for injunctive relief only and the plaintiff class members were not given an opportunity to opt out of the class, it would be improper to allow Plaintiffs access to the children's records without first obtaining consent by class members. We agree. Also, even if Plaintiffs are entitled to view the EI children's records, the statute

merely gives the children's representative a right to inspect Defendant's records. It does not contain any mandate that requires Defendant to devote its resources to compiling a list of names and addresses for Plaintiffs. We note that we are not ruling on whether Plaintiffs have authority to inspect the records of EI participants. Such a request is not before us.

## CONCLUSION

Based on the foregoing analysis we deny the motion for an order permitting attorney-client communication.

Charles P. Kocoras
Charles P. Kocoras
Chief Judge
United States District Court

Dated: DEC - 4 2002